**AURORA LOAN SERVICES, Appellant,**

v.

**Wade RAMEY and Francis Ramey, Appellees.**

No. 2003–CA–000993–MR.

Court of Appeals of Kentucky.

Sept. 3, 2004.

Glenn E. Algie, Cincinnati, OH, for appellant.

Michael R. Gosnell, Louisville, KY, for appellees.

Before BUCKINGHAM, MINTON, and TAYLOR, Judges.

## OPINION

MINTON, Judge.

Aurora Loan Services appeals from an order of the Jefferson Circuit Court denying its post judgment motions for relief. We affirm.

This appeal arises out of a mortgage foreclosure filed by Aurora against John and Helen Gross. In its original complaint, Aurora demanded a judgment against the Grosses for a principal balance of $93,000.19 and interest "at the rate of 9.75% from February 1, 1999" and enforcement of a lien against the real property. Aurora later amended its complaint to allege: "2. The Plaintiff clarifies to this Honorable Court that the interest accruing on Plaintiff's Note, is adjustable per the adjustable Note itself." The amended complaint simply demanded judgment for "the relief prayed for in its Complaint." On August 31, 2001, the circuit court sustained Aurora's default judgment motion. The affidavit submitted with the motion by

Aurora's Manager of Default Servicing stated that "plaintiff seeks interest from February 1, 1999[,] at a variable rate of interest." The circuit court signed the judgment drafted by Aurora. It granted recovery from the Grosses as follows:

a. The principal sum of $93,000.19[.]

b. Interest on [the principal sum of $93,000.19] at a variable rate from February 1, 1999 until paid. The interest may change on the first day of March, 2000, and on that day every sixth month thereafter. The interest rate will be based on an "Index," which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the *Wall Street Journal.*

c. Its costs herein expended.

d. Attorney fees in the amount of $900[.]

To secure the money judgment, the judgment further granted Aurora a lien on the real property described in the complaint and ordered that this property be sold by the Master Commissioner. The Master Commissioner advertised the property and sold the real property at public auction on December 4, 2001. In preparation for the sale, Aurora informed the commissioner that the amount of principal and interest it needed to satisfy the judgment totaled $118,737.04. This was the figure used by the Master Commissioner to compute the amount to be raised at the sale, $121,603.07, which was then included in the posted sale bills and in the public advertising. Wade and Frances Ramey became the purchasers, making the successful bid of $151,000. The commissioner's final re-

port of sale also reflected the amount to be raised as $121,603.07. There were no exceptions to the commissioner's report of sale filed with the court on December 7, 2001. The circuit court confirmed the sale by order entered January 24, 2002.

Soon after the sale, the Rameys began efforts to get a deed. At this point in the procedural history, the case ceased to be a routine foreclosure action. Beginning with a motion filed April 15, 2002, the Rameys sought the intervention of the circuit court to compel Aurora to provide an itemization of interest and costs so that they could pay the Master Commissioner and take delivery of the deed. The record does not document when Aurora realized that the judgment that it had drafted for the court and the figures it had furnished the Master Commissioner were short an estimated $45,000 in interest and other fees that might have been recovered under the terms of the note and mortgage. That shortfall blocked the routine closing of this foreclosure and judicial sale.

After a delay of several months and after at least three hearings before the court and the commissioner, Aurora moved, on August 26, 2002, to amend the judgment, citing clerical mistakes and CR [1] 60.01. Aurora also raised a host of issues arguing the Rameys' lack of standing to press for resolution of the judicial sale and the Rameys' failure to post an adequate bond. The circuit court referred all pending matters to the commissioner. Following hearings, the commissioner recommended a finding that Aurora was entitled to recover the principal amount,[2] plus interest of $14,989.32, calculated according

---

1. Kentucky Rules of Civil Procedure.

2. Whereas the principal judgment amount is $93,000.19, the Master Commissioner's Report, filed February 14, 2003 (Record, p. 352),

and the circuit court's order adopting this report entered April 9, 2003 (Record, p. 367), show the principal sum to be $93,019.

to the terms of the judgment,[3] and other costs for a total of $112,591.94, plus interest until paid. The commissioner also recommended rejection of Aurora's claim for additional cost items and further recommended denial of Aurora's motions to deny party status to the Rameys to litigate. In an order entered April 9, 2003, the circuit court adopted the commissioner's reports, concluding that "Aurora's mistakes were of its own making and were not the kind of mistakes envisioned by CR 60.01."

Aurora's main contention on appeal is that the circuit court abused its discretion in refusing to amend the judgment because of (1) Aurora's omission of a base interest rate of 6.99%, a figure that appears in the underlying note to be added to the variable interest rate; and (2) its omission of certain additional fees mentioned in the note or mortgage documents. Aurora further argues that the circuit court abused its discretion by failing to dismiss the Rameys as strangers to the controversy and by failing to enforce the local rules of the Jefferson Circuit Court by requiring the Rameys to post additional bond as purchasers. We will discuss Aurora's main contention first.

■ Kentucky's CR 60.01 states in pertinent part that

[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Kentucky's rule is identical to FRCP[4] 60(a). The overall form and substance of the provisions for the modification of judgments contained in CR 59 and CR 60 are sufficiently similar to FRCP 59 and FRCP 60 that federal case law analyzing the interplay of those rules is helpful for deciding the issues at hand.

Inherent in the provisions of [FRCP] 59 and 60 for the modification of judgments is a tension between two goals: (1) that of ensuring that the court's judgment reflect an appropriate adjudication of the rights and obligations of the parties, and (2) that of finally terminating the litigation in order to provide the parties with certainty as to the nature and extent of their rights and obligations as adjudicated. To these ends, these Rules weigh the value of finality and repose against the various grounds that a party may have for moving to alter a judgment, and they place varying limitations on the time within which such motions may be made. In general, the more clearly it appears that the ground is one upon which the judgment should be altered, the longer the time within which the motion is permitted; by the same token, the more prompt the motion, the more grounds that may be argued.[5]

FRCP 60(a) mediates between the interest in accuracy and the interest in finality. It does this by combining a very narrow scope—"clerical mistakes"—and unlimited time.

The rationale for the provision that a motion to correct a clerical error may be made "at any time" is that the judgment

**3.** The Master Commissioner followed the circuit court's May 16, 2002, direction that interest on the principal judgment at the variable interest rate would end thirty days from the date of confirmation of the sale, February 25, 2002. This was a contempt sanction imposed upon Aurora by the circuit court based upon its finding that Aurora failed to respond timely to the court's April 23, 2002, order for itemization.

**4.** Federal Rules of Civil Procedure.

**5.** *In re Frigitemp Corp.*, 781 F.2d 324, 326–327 (2nd Cir.1986).

simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated. In those circumstances, the goals of finality and repose are outweighed by the equitable goal of allowing a party who has in fact established his right to relief to receive that relief.[6]

In *Whittenberg Engineering & Construction Company v. Liberty Mutual Insurance Company*, Kentucky's highest court acknowledged that "where failure to include interest is a clerical error, it is correctable under CR 60.01."[7] The court in that case held, however, that the absence of prejudgment interest is not a clerical mistake correctable by CR 60.01 where the movant claimed prejudgment interest for the first time twenty-nine days after the jury's verdict.[8]

█ In the case at hand, Aurora demanded variable interest in its amended complaint, but it was about a year postjudgment and eight months after the judicial sale that appeared to settle on what "variable interest" it wanted. Aurora bungled every opportunity prior to the confirmation of the judicial sale to make what it now argues to be the proper variable interest claim. Furthermore, the additional cost item claims were never disclosed at all prior to judgment. The ultimate question, then, is whether Aurora's blunders are properly characterized as "clerical mistakes" so that the judgment and resulting judicial sale should remain open to correction under CR 60.01 at any time.[9] We are persuaded by the facts that the interest of finality and repose should weigh heavily against these blunders being considered "clerical mistakes." We have searched the record to find any inconsistency between what relief Aurora sought prior to judgment or what relief the circuit court stated it would grant prior to judgment and what the judgment reflects.[10] We find no inconsistency. Accordingly, we hold that the circuit court did not abuse its discretion in denying CR 60.01 relief.

█ Aurora's remaining arguments are, likewise, without merit. The trial court properly treated the Rameys as parties to the action after the Master Commissioner's report was filed. "Where one becomes the purchaser at a judgment sale, made by order of the [circuit court], he is a party to the proceeding in the event the validity of the sale is questioned, or such exceptions filed to the report of sale as, if sustained, would set it aside."[11] Likewise, the circuit court did not abuse its discretion by denying Aurora's motion for a resale of the property based upon the Rameys' delay in posting the full amount of the bond required by the local rules of the Jefferson Circuit Court. Aurora's blunders are the source of the confusion about the amount of the judgment. Having caused the confusion, Aurora cannot be heard to complain as the trial court attempted to bring about an equitable resolution.

6. *Id.* at 327.

7. Ky., 390 S.W.2d 877, 884 (1965).

8. *Id.*

9. Aurora has never advanced an alternative argument that its omissions could be treated as a "mistake [or] inadvertence" correctable under CR 60.02 on a motion made within a reasonable time not to exceed a year after judgment. Of course, correction by alteration or amendment under CR 59.05 is not available because of the strictly-limited 10–day period from the entry of the judgment.

10. *See United States v. Griffin*, 782 F.2d 1393 (7th Cir.1986).

11. *Stone v. Myrtle's Adm'r*, 148 Ky. 57, 146 S.W. 20, 21 (1912).

**300**

For the reasons discussed above, the Jefferson Circuit Court is affirmed.

ALL CONCUR.